Filed 1/27/15 opinion on remand

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GRAY1 CPB, LLC, | |
| Plaintiff and Appellant, | G047429 |
| v. | (Super. Ct. No. 30-2008-0112660) |
| SCC ACQUISITIONS, INC., et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeals from orders of the Superior Court of Orange County, Charles Margines, Judge. Affirmed.

Shumener, Odson & Oh, Robert J. Odson and Edward O. Morales for Plaintiff and Appellant.

White & Case, Aalok Sharma and Mark E. Gustafson for Defendants and Appellants.

\* \* \*

You cross continents and spend years trying to collect a judgment for your client. Late one Friday afternoon, the debtor's lawyer walks into your office and hands you a cashier's check for almost $13 million, covering the entire judgment and all accumulated interest. Do you accept the check or say, "No thank you, I need to make a motion for attorney fees first?" Put another way, is a bird in the hand worth two in the bush?

Gray1 CPB, LLC (Gray1), obtained a judgment against SCC Acquisitions and Bruce Elieff (collectively defendants). Almost two years later, defendants paid the amount of the outstanding judgment and accrued interest with a cashier's check. In the interim, Gray1 allegedly incurred more than $3 million in attorney fees in an effort to enforce its judgment. The fees were largely incurred in litigating a separate action against Elieff in an effort to untangle what Gray1 asserted were a number of fraudulent transactions resulting in the placement of fraudulent liens on Elieff's real property as part of a scheme to insulate Elieff's properties from the judgment.

According to Gray1, it was only when it appeared the separate action was imminently headed toward resolution in Gray1's favor that defendants gave Gray1 the cashier's check to pay the judgment. Gray1 did not immediately cash the check. It held onto the check long enough for its attorneys to file a motion for postjudgment costs, including attorney fees. Once deposited, the issuing bank honored the check.

Judgment creditors who have prevailed on a contract authorizing the award of attorney fees are entitled to postjudgment attorney fees. (Code of Civ. Proc., §§ 685.040, 685.070, subd. (a)(6); all statutory references are to the Code of Civil Procedure unless otherwise stated.) However, a motion for postjudgment costs (including attorney fees) must "be made before the judgment is satisfied in full." (§ 685.080, subd. (a).) The trial court denied Gray1's motion for postjudgment costs, finding the motion was made

2

after the judgment had been fully satisfied. Gray1 appealed. In this appeal we are called upon to determine when a judgment paid with a cashier's check is deemed satisfied.

In addition to opposing Gray1's motion, defendants filed a motion of their own. They sought a determination that Gray1 unjustly failed to file a timely acknowledgment of full satisfaction of judgment. (§ 724.050, subd. (e).) The trial court denied defendants' motion, finding defendants failed to prove damages, and concluding Gray1's failure to file a timely full satisfaction of judgment was not without just cause. Defendants appealed from that order.

We previously issued a published opinion in this matter, holding Gray1's motion for attorney fees was untimely because it was made after defendants gave Gray1 and Gray1 accepted a cashier's check for the full amount of the judgment, plus accrued interest and awarded attorney fees. Gray1 then filed a petition for review. Our Supreme Court granted review and stayed further briefing pending its decision in *Conservatorship of McQueen*. In *Conservatorship of McQueen* (2014) 59 Cal.4th 602, 605, the Supreme Court held attorney fees on appeal from the underlying judgment are not subject to section 685.080 (motion for attorney fees must be brought *before* the judgment is paid in full). After the Supreme Court decided *McQueen*, it transferred the present case back to this court to decide in light of the decision in *McQueen*. We have and conclude our earlier decision was correct.

In *Conservatorship of McQueen*, *supra*, 59 Cal.4th 602, the plaintiff won a judgment in a financial abuse of an elder case. The judgment was appealed and plaintiff prevailed. Welfare and Institutions Code section 15657.5, subdivision (a) provides for an award of attorney fees to a prevailing plaintiff. Plaintiff also brought a separate action in an effort to prevent or reverse defendant's transfer of real property to third persons. The Supreme Court held section 685.080's timeliness requirement for a motion for attorney fees did not apply to attorney fees incurred in defending the judgment on appeal in the

3

conservatorship matter because those fees were incurred in *defending* the elder financial abuse judgment, not in an effort to *enforce* the judgment. (*Conservatorship of McQueen*, *supra*, 59 Cal.4th at p. 605.) Attorney fees incurred in the separate action, however, were incurred in an effort to enforce the judgment plaintiff obtained in the elder financial abuse case and are subject to the time limit set forth in section 685.080. (*Conservatorship of McQueen*, *supra*, 59 Cal.4th at p. 605.) Because Gray1's motion for attorney fees incurred in a separate action to enforce its judgment in the underlying matter was not filed before defendants paid Gray1 with a certified cashier's check accepted by Gray1 and in an amount in excess of the full judgment (including awarded attorney fees and accrued interest), Gray1's motion was untimely and properly denied by the superior court.

I

FACTS

In August 2010, Gray1 obtained a judgment in excess of $9.1 million, plus interest, against defendants as a result of the defendants' failure to make good on their guaranties of a loan made to a limited liability company owned by Elieff. (See *SCC Acquisitions, Inc. v. Central Pacific Bank* (2012) 207 Cal.App.4th 859, 861-862.) The written guaranties contained provisions providing for the award of attorney fees. (*SCC Acquisitions, Inc. v. Central Pacific Bank* (Oct. 30, 2012, G045718) [nonpub.opn.].) The judgment provided Gray1 was entitled to attorney fees and costs to be established by a cost bill or motion. By interlineation, the court amended the judgment to reflect the award of over $1.5 million in attorney fees and more than $44,000 in costs.

Defendants made no payments on the judgment until June 8, 2012. On that date, defendants' attorney hand delivered to Gray1's attorneys a cashier's check in the amount of $12,918,654.46 and a letter. According to the letter, the cashier's check covered the amount of the judgment, including accumulated interest, and the judgment

4

was now fully satisfied.  The letter also demanded Gray1 immediately file a full satisfaction of judgment.  Additionally, the letter contained a notice in the language of section 724.050, subdivision (b):  "'Important warning. If this judgment has been satisfied, the law requires that you comply with this demand not later than 15 days after you receive it.  If a court proceeding is necessary to compel you to comply with this demand, you will be required to pay my reasonable attorney's fees in the proceeding if the court determines that the judgment has been satisfied and that you failed to comply with the demand.  In addition, if the court determines that you failed without just cause to comply with this demand within the 15 days allowed, you will be liable for all damages I sustain by reason of such failure and will also forfeit one hundred dollars to me.'"

Twelve days after receiving the cashier's check, on June 20, 2012, Gray1 filed a motion for postjudgment costs, including attorney fees incurred in attempting to enforce the judgment.  Gray1 alleged that in the two years following the judgment, it had incurred more than $3.1 million in attorney fees in efforts to collect on its judgment.[1]  On June 22, 2012, Gray1 filed an acknowledgment of partial satisfaction of judgment.  Gray1 contended it was entitled costs (including attorney fees) incurred in attempting to enforce its judgment, and therefore, the amount paid by defendants was not in full satisfaction of the judgment.

Gray1 deposited the cashier's check on June 21, 2012, the day after it filed the motion for postjudgment costs.  The bank "fund[ed]" the check on June 25, 2012.

Fifteen 15 days after hand delivering the cashier's check and letter, defendants filed a motion to compel Gray1 to file an acknowledgement of full satisfaction of judgment on June 27, 2012.  (§ 724.050, subd. (d).)  The motion alleged defendants not only paid the judgment in full, but overpaid by more than $281,000, based

---

[1] As the amount of fees reasonably incurred by Gray1 is not an issue in the present appeal, there is no need to set forth the extensive efforts Gray1 alleged it undertook to enforce its judgment.

on a miscalculation as to the date postjudgment interest started accumulating and "numerous collections and levies that Gray1 has evidently already made."

The court heard the parties' respective motions on September 12, 2012. Defendants argued Gray1's motion for postjudgment attorney fees was untimely because section 685.080 requires a motion for costs, including attorney fees permitted by section 685.040, to be filed before the judgment has been fully satisfied (§§ 685.070, subd. (b), 685.080, subd (a)). Defendants further asserted the judgment was fully satisfied when the cashier's check was delivered to Gray1 and accepted on June 8, 2012, almost two weeks before Gray1 filed its motion for postjudgment costs. Gray1 conceded that had defense counsel walked into Gray1's attorney's office and paid off the outstanding judgment with a briefcase full of cash, instead of with a cashier's check, the judgment would have been fully satisfied that same day and Gray1 would have been prohibited from thereafter filing a motion for postjudgment costs. Gray1 argued, however, its motion was not untimely because a judgment paid by check is not satisfied until the check is ultimately honored by the issuing bank, citing section 724.010.

In a five-page ruling, the court denied as untimely Gray1's motion for postjudgment costs. The court also denied defendants' motion for damages and sanctions (§ 724.050, subd. (e)), finding defendants failed to present any evidence of costs, attorney fees, or other damages and that Gray1's failure to file a timely acknowledgment of full satisfaction of judgment was not without just cause.

II

DISCUSSION

A. *Gray1's Appeal*

Gray1 appeals, contending the trial court erred in finding its motion for postjudgment costs untimely. As we are not faced with disputed facts and this matter

6

involves statutory interpretation, our review is de novo. (*Jaffee v. Pacelli* (2008) 165 Cal.App.4th 927, 934.)

Under the "American rule," followed in California, "each party to a lawsuit ordinarily must pay his or her own attorney fees. [Citations.]" (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 516.) An exception to this rule exists where the parties have agreed to "the measure and mode of compensation of attorneys." (§ 1021.) For example, a contract may contain a provision providing for attorney fees in enforcing the contract. Where a contract contains such a provision, the court must fix reasonable attorney fees as an element of the costs of the lawsuit. (Civ. Code, § 1717, subd. (a); § 1033.5, subd. (a)(10)(A).) In this instance, the written guarantees signed by the defendants provided for "reasonable attorneys' fees," including "attorneys' fees and related costs of enforcement of" a judgment. (*SCC Acquisitions, Inc. v. Central Pacific Bank*, *supra*, G045718.)

In *Chelios v. Kaye* (1990) 219 Cal.App.3d 75, the plaintiffs appealed an order denying postjudgment costs "consisting principally of postjudgment attorney's fees." (*Id.* at p. 77.) Plaintiffs argued they were entitled to attorney fees as costs in enforcing their judgment because the contract underlying the action contained a unilateral attorney fee provision, and Civil Code section 1717[2] makes such provisions reciprocal. (*Chelios v. Kaye*, *supra*, 219 Cal.App.3d at p. 78.) The appellate court found Civil Code section 1717 inapplicable, reasoning that attorney fees incurred in enforcing a judgment were not incurred in enforcing the *terms of the contract*. (*Id.* at p. 79.) The court concluded that "[w]hen, as here, a lawsuit on a contractual claim has been reduced to a

---

[2] "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a).)

7

final, nonappealable judgment, all of the prior contractual rights are merged into and extinguished by the monetary judgment, and thereafter the prevailing party has *only* those rights as are set forth in the judgment itself. [Citations.]" (*Id*. at p. 80.)

In response to the *Chelios* decision, the Legislature amended section 685.040 of the Enforcement of Judgments Law (§ 680.010 et seq.) in 1992. (*Chinese Yellow Pages Co. v. Chinese Overseas Marketing Service Corp.* (2008) 170 Cal.App.4th 868, 880; see Stats. 1992, ch. 1348, § 3.) The amendment did not abrogate *Chelios*'s holding that contractual rights merge into the judgment. Rather, the amendment provided for the inclusion of postjudgment attorney fees as costs when the contract provided for attorney fees and attorney fees were initially included in the judgment. "Attorney's fees incurred in enforcing a judgment are included as costs collectible under [the Enforcement of Judgments Law] if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5." (§ 685.040; see § 1033.5, subd. (a)(10)(A) [attorney fees allowable as cost if authorized by contract].) Because the judgment in this matter originally awarded Gray1 attorney fees as costs based on the terms of the underlying contract, Gray1 was entitled to reasonable attorney fees in enforcing its judgment. The attorney fee provisions in the written guaranties do not, however, trump provisions of the Enforcement of Judgments Law (§ 680.010 et seq.).

There does not appear to be any dispute concerning Gray1's right to timely seek reasonable attorney fees as costs in efforts to enforce its judgment. That having been said, any motion for such costs must be timely made. To be timely, the motion must be made *before* the underlying judgment has been fully satisfied and within two years of the fees being incurred. (§ 685.080, subd. (a); *Conservatorship of McQueen*, *supra*, 59 Cal.4th at p. 616; *Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125, 141; *Carnes v. Zamani* (9th Cir. 2007) 488 F.3d 1057, 1060; cf. §

8

685.070, subd. (b) [memorandum of costs].) "'[T]he statutory purpose of requiring that the motion for enforcement costs be brought "before the judgment is satisfied in full" (§ 685.080, subd. (a)) is to avoid a situation where a judgment debtor has paid off the entirety of what he [justifiably] believes to be his obligation in the entire case, only to be confronted later with a motion for yet more fees.' (*Lucky United Properties Investment, Inc. v. Lee*, *supra*, 185 Cal.App.4th at p. 144.)" (*Conservatorship of McQueen*, *supra*, 59 Cal.4th at pp. 615-616.) That is the present situation.

> 1. *Attorney Fees* not *Awarded by the Court are not Part of the Judgment.*

Before addressing the issue of when a judgment paid with a cashier's check is satisfied, we address another of Gray1's arguments. Gray1 claims defendants did not fully satisfy the judgment because the amount tendered, almost $13 million, did not include the substantial postjudgment attorney fees Gray1 incurred in attempting to enforce its judgment by bringing an action to set aside the alleged fraudulent liens on Elieff's real estate holdings, although such fees were never awarded by a court. Those attorney fees, therefore, were not part of the judgment. "The amount required to satisfy a money judgment is the total amount of the judgment as entered or renewed with the following additions and subtractions: [¶] (a) The addition of costs added to the judgment pursuant to Section 685.090. [¶] (b) The addition of interest added to the judgment as it accrues pursuant to Sections 685.010 to 685.030, inclusive. [¶] (c) The subtraction of the amount of any partial satisfactions of the judgment. [¶] (d) The subtraction of the amount of any portion of the judgment that is no longer enforceable." (§ 695.210.) With exceptions not applicable here, costs (including postjudgment attorney fees) do not become part of the judgment until such time as the court files an order allowing the costs. (§ 685.090, subd. (a).) Attorney fees claimed, but not awarded by the court, are not part of section 695.210's calculation. Therefore, Gray1's contention that defendants'

9

payment—which in fact exceeded the amount of the judgment plus accrued interest—did not fully satisfy the judgment is without merit.

Gray1 relies on out-of-state cases for the proposition that payment of an amount excluding attorney fees incurred in enforcing the judgment does not fully satisfy the judgment. The out-of-state decisions cited by Gray1are not relevant to our analysis because they do not involve analogous controlling statutes. As stated above, at least two sections of the Code of Civil Procedure expressly require a judgment creditor's application for postjudgment attorney fees as costs must be made *before* the judgment is fully satisfied. (§§ 685.070, subd. (b), 685.080, subd. (a).) When the Enforcement of Judgments Law refers to a judgment having been fully satisfied, it means an outstanding judgment, not what the judgment would be if postjudgment costs were to be added thereto. No other interpretation is possible. If a judgment were not fully satisfied because of the existence of as yet unawarded attorney fees, the phrase *before the judgment is fully satisfied* would serve no purpose. (*In re Greg F.* (2012) 55 Cal.4th 393, 424 [court must avoid construing statute in such a way that statutory language is rendered surplusage]; see § 685.090, subd. (a)(1) [postjudgment costs become part of the judgment when ordered by the court].) Therefore, the only reasonable interpretation is that statutory references to the judgment having been fully satisfied, are to the judgment (including accrued interest) as it existed at the time payment was made.

Gray1 also relies on *Heimstadt v. Tapered Parts, Inc.* (1957) 155 Cal.App.2d 711, claiming it is "directly on point" in arguing California public policy requires a judgment debtor to pay the judgment as well as reasonably incurred attorney fees in an effort to collect on the judgment. *Heimstadt* is not directly on point, and in fact, is inapposite.

In *Heimstadt*, the parties entered into a contract that provided: "'Should an attorney be employed to procure payment hereof by suit or otherwise, the undersigned,

10

jointly and severally, agree to pay a reasonable sum as attorney's fees therefor.'" (*Heimstadt v. Tapered Parts, Inc.*, *supra*, 155 Cal.App.2d at p. 712.) Prior to the plaintiff filing a lawsuit, the defendant offered payment of an amount that did not include the $300 plaintiff claimed was the reasonable amount of attorney fees incurred as a result of defendant's breach of the contract. (*Id*. at pp. 712-713.) It was in this context that the court stated, "It cannot be seriously maintained that an obligation which includes a liability for attorney's fees can be satisfied by the payment of the sum exclusive of attorney's fees." (*Id*. at p. 714.) The court continued: "When the obligation to pay such a charge has accrued it becomes a part of the principal obligation. A creditor to whom payment is due has no duty to accept less than the entire debt." (*Ibid*.) We agree.

*Heimstadt* involved an offer of payment on an unadjudicated debt. In the present case, we are concerned with a judgment. That is a distinction with a difference, for a judgment is satisfied when the total amount of the judgment plus accrued interest has been paid. (§ 695.210; see § 685.090, subd. (a) [costs (including postjudgment attorney fees) do not become part of the judgment until such time as the court files an order allowing the costs].) Thus, while an unadjudicated debt may not be satisfied by payment of an amount exclusive of agreed to reasonable attorney fees (*Heimstadt v. Tapered part, Inc.*, *supra*, 155 Cal.App.2d at p. 714), a judgment debtor who pays the judgment creditor in an amount that includes the full measure of the judgment plus accrued interest, has fully satisfied the judgment. (§ 695.210.)

Because the cashier's check was sufficient to cover the outstanding judgment and accrued interest, it fully satisfied the judgment. The question is: *When* did it satisfy the judgment? Gray1 contends the judgment is not satisfied until the bank honored the check, which occurred on June 25, 2012, five days after Gray1 brought its motion for postjudgment attorney fees as costs. Defendants argue the judgment was fully satisfied when Gray1 accepted the cashier's check, 12 days before Gray1 filed its motion.

11

2. *The Motion for Postjudgment Attorney Fees was Untimely.*

Gray1 argues the statutory scheme states a judgment paid with a check is not satisfied until the check is cashed. It relies on section 724.010. Subdivision (c) of section 724.010 provides: "Where a money judgment is satisfied by payment to the judgment creditor by check or other form of noncash payment that is to be honored upon presentation by the judgment creditor for payment, the obligation of the judgment creditor to give or file an acknowledgment of satisfaction of judgment arises only when the check or other form of noncash payment has actually been honored upon presentation for payment." This subdivision addresses the timing of a judgment creditor's obligation to file an acknowledgment of satisfaction, not when a judgment is deemed to have been fully satisfied. As the court noted in *Long v. Cuttle Construction Co.* (1998) 60 Cal.App.4th 834, the time a judgment is deemed satisfied "need not be the same as the time the judgment creditor is obliged to give an acknowledgment of the satisfaction of judgment." (*Id.* at p. 837, fn. 1.)

"'Performance of an obligation for the delivery of money only, is called payment.' [Citation.] Payment to a judgment creditor is governed by the cases and statutes which govern commercial transactions. [Citation.]" (*Long v. Cuttle Construction Co.*, *supra*, 60 Cal.App.4th at p. 837.) In the present case, that means California Uniform Commercial Code section 3310. "Unless otherwise agreed, if a certified check, cashier's check, or teller's check is taken for an obligation, the obligation is discharged to the same extent discharge would result if an amount of money equal to the amount of the instrument were taken in payment of the obligation." (Cal. U. Com. Code, § 3310, subd. (a).)

We reject Gray1's contention that the Enforcement of Judgments Law conflicts with and prevails over California Uniform Commercial Code section 3310. As we have said, section 724.010 addresses the timing of a judgment creditor's obligation to

12

file an acknowledgement of satisfaction, not when the judgment has been satisfied. We also reject Gray1's assertion that the phrase "[u]nless otherwise agreed" in California Uniform Commercial Code 3310, subdivision (a) was satisfied here based on the guaranties defendants were found to have breached. The agreement to pay attorney fees in the case of a breach has nothing to do with the *form* of payment.

Thus, while Gray1 had the right to reject the cashier's check and demand payment in cash (*Conservatorship of McQueen*, *supra*, 59 Cal.4th at p. 615; *Long v. Cuttle Construction Co.*, *supra*, 60 Cal.App.4th at p. 837), having failed to do so, "the determination of the time of payment is governed by the rules pertaining to commercial transactions generally. [Citation.]" (*Long v. Cuttle Construction Co.*, *supra*, 60 Cal.App.4th at p. 837.) When Gray1 accepted the cashier's check, which was subsequently honored, the effect was the same as if it had accepted cash. (Cal. U. Com. Code, 3310, subd. (a).) The judgment was fully satisfied when Gray1 accepted the cashier's check.

Gray1 argues its motion for attorney fees was not untimely under *Conservatorship of McQueen*, *supra*, 59 Cal.4th 602, because a judgment paid by check is not satisfied until the check has been honored. (*Id*. at p. 616.) Gray1 takes language from *McQueen* out of context. Addressing when a judgment is deemed satisfied, the court stated, "If the tendered payment is by *uncertified* check, as it was in this case, the creditor may postpone presenting the check for payment and, in the meantime, file his or her cost memorandum. (See § 724.010, subd. (c) [obligation to acknowledge satisfaction of judgment arises only when check is presented and honored]; *Hale v. Bohannon* (1952) 38 Cal.2d 458, 467 [the mere giving of a check does not constitute payment].) Even if payment is by certified check or similar instrument, the *acceptance* of which arguably constitutes satisfaction, [citation], the judgment creditor retains, at the least, the option of rejecting the certified check and filing the motion or memorandum for enforcement costs

13

and fees." (*Conservatorship of McQueen*, *supra*, 59 Cal.4th at p. 615, first italics added.)

That statement in *McQueen* is entirely consistent with our conclusion Gray1 accepted the cashier's check and, absent an agreement to the contrary, is deemed as acceptance of the full amount of the check. (Cal. U. Com. Code, § 3310, subd. (a).) Here, defendants' check was actually for more than the full judgment, awarded costs including attorney fees, and accumulated interest. There having been no agreement to the contrary in this matter, Gray1's acceptance of the cashier's check constituted full satisfaction of the judgment. Gray1's subsequent motion for attorney fees was, therefore, untimely. "Under sections 685.070 and 685.080, the judgment creditor cannot accept a payment as full satisfaction of the judgment, then file a memorandum or motion for additional enforcement costs and fees." (*Conservatorship of McQueen*, *supra*, 59 Cal.4th at p. 616.) Gray1 accepted and subsequently cashed the cashier's check for an amount greater than the judgment. It cannot claim it did not accept the check because it wanted more money than the check was for. As the *McQueen* court recognized, the statute requiring motions for attorney fees to be made before the judgment is satisfied in full "serves a policy purpose of its own, to prevent unfair surprise to the judgment debtor." (*Conservatorship of McQueen*, *supra*, 59 Cal.4th at p. 615.)

If a judgment creditor is presented with a cashier's check for the amount of the judgment plus accrued interest and awarded costs, but the judgment creditor wants to seek additional attorney fees incurred in enforcing its judgment, the judgment creditor "retains, at the least, the option of rejecting the certified check and filing the motion for memorandum for enforcement costs and fees." (*Conservatorship of McQueen*, *supra*, 59 Cal.4th at p. 615.) Gray1 did not reject the cashier's check. It accepted the check. Having accepted it, the judgment was satisfied and its subsequent motion for attorney fees was untimely. (*Id.* at p. 616.)

14

We reject Gray1's contention that it could not refuse the tendered cashier's check because had it done so, defendants would have claimed the judgment was fully satisfied upon the "tender" of the check, based on section 685.030. Subdivision (d)(2) of that section states that when interest on a judgment ceases to accumulate where the judgment has been satisfied by payment with a check.[3] Interest on a judgment ceases to accrue (§ 685.030, subd. (a)) "[t]he date satisfaction is *tendered* to the judgment creditor or deposited in court for the judgment creditor." (§ 685.030, subd. (d)(2), italics added.) This statute does not compel a judgment creditor to accept a particular form of payment. Moreover, in the present situation, had Gray1 rejected defendants' payment with the intent to file a motion for postjudgment attorney fees before defendants returned with cash, no mischief would have been done to either side. Gray1 could then have filed a timely motion for postjudgment costs, and interest on the judgment would have stopped accruing as defendants tendered full satisfaction of the outstanding judgment with accrued interest. After all, there is no reason a judgment creditor should continue to earn interest on its judgment after refusing payment of the judgment.

The Legislature has declared interest on a judgment ceases to accumulate on the date a check in the amount of the judgment and accumulated interest is delivered to the judgment creditor, notwithstanding the fact that the honoring of the check may take a period of days. (§ 685.030, subd. (d)(2).) We recognize section 685.030 applies to the accumulation of interest on a judgment, just as section 724.010, subdivision (c) applies to the judgment creditor's obligation of file an acknowledgement of satisfaction, but Gray1 has pointed to no section in the Enforcement of Judgments Law compelling us to conclude California Uniform Commercial Code section 3310 is inapplicable in cases involving the payment of judgments. Given the existence of California Uniform

---

[3] Section 685.030 does not distinguish between a cashier's check and other types of checks.

15

Commercial Code section 3310 (cashier's check taken for an obligation has the same effect as if paid in cash), we think the Legislature would have enacted a statute abrogating California Commercial Code section 3310 in the limited context of enforcing judgments if that was the Legislature's intent.

The rule we announce today does no disservice to judgment creditors who have incurred postjudgment costs they wish to add to the judgment. Like Gray1, if they have not yet filed a motion for postjudgment costs at the time the judgment debtor tenders a cashier's check in full payment of the outstanding judgment, they are free to reject the payment and to file a motion for postjudgment costs. In fact, for purposes of filing a timely motion for postjudgment costs, postjudgment creditors who are provided a cashier's check may be in a better situation than those who are paid in cash. A judgment creditor must accept cash, but may reject a cashier's check and instead file a motion for postjudgment costs, including attorney fees.

This is not to say Gray1's argument is not without sympathetic appeal. If Gray1 is to be believed, Elieff's slippery efforts to evade paying the judgment against him required Gray1 to follow a tortuous paper (or rather, electronic) trail—with discovery battles in foreign jurisdictions—to prove the liens on Elieff's properties were fraudulent and put in place by a company run by a close associate of Elieff's based on phony loans. That being said, Gray1 could have made a motion or motions for postjudgment costs, including attorney fees, prior to defendants fully satisfying the judgment nearly two years after entry of the judgment. "If the creditor has reason to believe cash may imminently be tendered to pay the judgment, prudence counsels filing a motion or memorandum for the costs and fees accumulated to that point . . . ." (*Conservatorship of McQueen*, *supra*, 59 Cal.4th at p. 615.) And as stated earlier, Gray1 could have refused the cashier's check and prepared its motion for postjudgment costs. (*Ibid.*) Having accepted the cashier's check, however, the judgment against defendants

16

was fully satisfied to the same extent it would have been had Gray1 been paid in cash.

Contrary to Gray1's contention, the trial court did not "allow[] Elieff to escape his obligation to pay for" postjudgment costs, including attorney fees. The court applied the plain language of the applicable statutes. If Elieff escaped, it is not because the trial court "allowed"" it, but rather because Gray1 did not file its motion *before* the outstanding judgment was fully satisfied, as required by law. (§§ 685.070, subd. (b), 685.080, subd. (a); *Conservatorship of McQueen*, *supra*, 59 Cal.4th at p. 615.) Accordingly, we find defendants fully satisfied the judgment on June 8, 2012, when defendants delivered and Gray1 accepted a cashier's check in an amount sufficient to cover the judgment plus accumulated interest. Gray1's motion for postjudgment costs was untimely when made 12 days later.

Lastly, Gray1 urges us to find sections 685.070, subdivision (b) and 685.080, subdivision (a) were equitably tolled, thus making its motion for postjudgment costs timely. Equitable tolling is a judicially created doctrine that permits the tolling of a statute of limitations. (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 100.) Equitable tolling is invoked ""[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one."' [Citations.]" (*Ibid.*) The Enforcement of Judgments Law provides two remedies through which a judgment creditor may obtain an order for postjudgment attorney fees as costs: section 685.070, subdivision (b) [memorandum of costs] and section 685.080, subdivision (a) [motion for costs]. Equitable tolling does not apply in this matter because Gray1's action to set aside fraudulent liens was an effort to satisfy Gray1's judgment, not an effort to collect postjudgment attorney fees that had not yet been awarded by the court. (See § 685.090, subd. (a)(1) [postjudgment costs become part of judgment only when ordered by the court].)

17

Even were we to assume for purposes of argument equitable tolling applies to motions as well as actions, Gray1 forfeited this issue by not raising it below. "'"'"[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." Thus, "we ignore arguments, authority and facts not presented and litigated in the trial court. Generally, issues raised for the first time on appeal which were not litigated in the trial court are [forfeited]. [Citations.]"'" [Citation.]' [Citation.]" (*In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 912 [equitable tolling issue forfeited].)

B. *Defendants' Appeal*

"When a money judgment is satisfied, the judgment creditor immediately shall file with the court an acknowledgment of satisfaction of judgment." (§ 724.030.) If the judgment creditor fails to file an acknowledgment of satisfaction of judgment, the judgment debtor may serve the judgment creditor with a written demand for the judgment creditor to file an acknowledgment of satisfaction with the court. (§ 724.050, subd. (a).) Subdivision (b) of section 724.050 sets forth the language to be used in the demand.[4] Defendants demand letter contained the requisite language. If "without just cause," the judgment creditor fails to comply within 15 days of the demand, the judgment creditor is liable to the judgment debtor for $100 plus costs, attorney fees, and damages sustained by reason of the failure to comply. (§ 724.050, subd. (e).) Gray1 did not file the demanded

_____

[4] "The demand shall include the following statement: 'Important warning. If this judgment has been satisfied, the law requires that you comply with this demand not later than 15 days after you receive it. If a court proceeding is necessary to compel you to comply with this demand, you will be required to pay my reasonable attorney's fees in the proceeding if the court determines that the judgment has been satisfied and that you failed to comply with the demand. In addition, if the court determines that you failed without just cause to comply with this demand within the 15 days allowed, you will be liable for all damages I sustain by reason of such failure and will also forfeit one hundred dollars to me.'" (§ 724.050, subd. (b).)

18

acknowledgment of full satisfaction of judgment. The trial court, however, denied defendants' motion for penalties, finding defendants did not submit evidence of their costs, attorney fees, or other damages, and that Gray1's failure "to file an acknowledgment of satisfaction of judgment was not without just cause."

Defendants contend they were not obligated to submit their costs, attorney fees, or damages because subdivision (e) of section 724.050 provides "[l]iability under this subdivision may be determined in the proceeding on the motion pursuant to subdivision (d) *or in an action*." (Italics added.) Be that as it may, defendants brought their motion to compel Gray1 to file an acknowledgment of full satisfaction of judgment, for an order directing Gray1 to forfeit $100 pursuant to section 724.050, subdivision (e), and for damages in the present case. Having done so, defendants cannot now be heard to complain they did not need to prove their costs and damages in the present action. Even were we to assume for sake of argument defendants could piecemeal their action— proving liability in the present matter and bringing a separate action to establish damages—the court found Gray1's action in failing to file a timely acknowledgment of full satisfaction of judgment was not without just cause. That finding is fatal to defendants' claim.

Whether viewed under a substantial evidence test (*George S. Nolte Consulting Civil Engineers, Inc. v. Magliocco* (1979) 93 Cal.App.3d 190, 193-194 [substantial evidence supported trial court's decision on section 724.050 motion] or for an abuse of discretion (*Cunningham v. Magidow* (2013) 219 Cal.App.4th 298, 301, 304-305 [trial court abused discretion in ruling on section 724.050 motion]), the trial court did not err in ruling on defendant's motion. As Gray1stated in its opening brief, this case "may [involve] an issue of first impression in California." Even though Gray1's position was ultimately rejected by the trial court, a ruling we affirm, the fact that we found resolution of the issue meets standards for publication (see Cal. Rules of Court, rule

19

8.1105(c)) militates against finding Gray1's action was without just cause. Additionally, although Gray1 did not file a timely acknowledgment of full satisfaction of judgment, the acknowledgment it filed was for the full amount paid by defendants. That being the case, we cannot conclude the trial court erred in concluding Gray1's action was not without just cause.

## III

## DISPOSITION

The orders of the trial court are affirmed. In the interests of justice, the parties shall each bear their own costs on appeal.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.


20